UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**JAMES ROBERT CROUCH**                                                                           **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 1:21-CV-P25-GNS**

**WARREN COUNTY REGIONAL JAIL et al.**                        **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, James Robert Crouch, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons set forth below, the Court will dismiss some claims and allow other claims to continue.

**I. STATEMENT OF CLAIMS**

Plaintiff, a convicted prisoner housed at Warren County Regional Jail (WCRJ), names as Defendants in their individual and official capacities WCRJ Jailer Stephen Harmon and LPN Jana Marple. He also names Southern Health Partners (SHP), the WCRJ medical provider, and WCRJ. He alleges that COVID testing on December 23, 2020, revealed that two inmates in his 12-man cell were positive for the virus. He alleges, "All the medical staff did and jail staff did were give us a mask." He states that it is impossible to socially distance in the cell and that WCRJ has recycled air "so its in the vents anyway." He asserts, "Jail and medical staff know this is a deadly virus. They also know they were leaving positive and negative inmates together." Plaintiff further alleges that on January 6, 2021, Defendant Marple retested the inmates, which showed that all inmates except two were positive for the virus.

Plaintiff alleges that during this time he had a medical emergency requiring a nurse to give him nitroglycerine due to his blood pressure. He states, "After that the Defendant could not get treatment to his cell over his blood pressure," with medical help sometimes taking two days. Plaintiff alleges, "Medical staff and jail staff is totally ignoring inmates calls for help and medical request sheets. We are all positive for COVID 19 corona virus and medical is doing nothing for us." He further states that his "blood pressure, breathing, and a lot of other symptoms of COVID 19 are being ignored."

As relief, Plaintiff requests monetary and punitive damages and injunctive relief in the form of release from jail.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*A. Individual-capacity claims*

Section 1983 creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States. A claim under § 1983 must therefore allege two elements: (1) the deprivation of federal statutory or constitutional rights by (2) a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint v. Ky. Dept of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Absent either element, no § 1983 claim exists. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

The only allegation against Defendant Marple is that, on January 6, 2021, she retested the inmates for COVID-19. Clearly, simply retesting inmates for the presence of the corona virus does not allege a violation of a constitutional right. Consequently, Plaintiff has failed to state a claim against this Defendant.

The complaint contains no allegations against Defendant Harmon. To the extent that Plaintiff seeks to hold Defendant Harmon, as the WCRJ Jailer, liable in his individual capacity for deliberate indifference to a serious medical need, the Court will dismiss such because Plaintiff has not alleged that Defendant Harmon directly participated in the events related to this claim. In so finding, the Court notes that the doctrine of *respondeat superior* does not apply in § 1983 actions to impute liability to supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). "[L]iability of supervisory personnel must be based on more than merely the right to control employees."

*Hays*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir.2003) (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Accordingly, the Court will dismiss the individual-capacity claims against Defendants Marple and Harmon. Because punitive damages are only recoverable against Defendants sued in their individual capacities, the Court will also dismiss Plaintiff's claim for punitive damages.

## B. Official-capacity claims and claims against WCRJ and SHP

The claims against Defendants Marple and Harmon in their official capacities must be construed as brought against the governmental entity which employs them. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, the claims against these Defendants in their official capacities are actually brought against the Warren County government and SHP (assuming that Defendant Marple, a nurse, is employed by SHP rather than WCRJ). *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

WCRJ is not a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983. *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983); *see also Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983). In this situation, it is Warren County that is the proper defendant in this case. *Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson

County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County itself). Further, Warren County is a "person" for purposes of § 1983. *Monell v. N.Y. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). The Court will therefore construe the claims against WCRJ as brought against Warren County.

When a § 1983 claim is made against a municipality, like Warren County or SHP,[1] a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691 (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of*

---

[1] The municipal-liability law also applies to § 1983 claims against a private corporation like SHP. *See e.g.*, *Catoe v. Hardin Cty. Det. Ctr.*, No. 3:14CV-P494-R, 2014 WL 6909052, at *4 (W.D. Ky. Dec. 9, 2014) (citing, inter alia, *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996)).

*Wixom,* 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

Reading Plaintiff's complaint liberally as this Court is required to do, the Court finds that Plaintiff's has alleged a policy of Warren County and/or SHP related to the alleged constitutional violations of failing to protect inmates from contracting COVID-19 and of failing to provide medical care during the pandemic.

## C. Release from jail

Plaintiff asks for injunctive relief in the form of release from jail. However, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Because Plaintiff is seeking immediate release from detention, the § 1983 claim for such relief cannot lie and will be dismissed.

### III. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff's individual-capacity claims against Defendant Marple and Harmon, for punitive damages, and for release from jail are **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

The Court will enter a separate Order Directing Service and Scheduling Order to govern the development of the remaining claims.

Date: March 30, 2021

Greg N. Stivers, Chief Judge
United States District Court

cc: Plaintiff, *pro se*
    Defendants
    Warren County Attorney
4416.009